UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| ICONICS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 11-11526-DPW |
| | ) | |
| SIMONE MASSARO, VINCENT R. VOLPE, | ) | |
| CHRISTOPHER VOLPE, VENTO | ) | |
| INDUSTRIES, INC., BAXENERGY GmbH | ) | |
| And BAXENERGY ITALIA S.r.L., | ) | |
| | ) | |
| Defendants. | ) | |


MEMORANDUM AND ORDER
January 15, 2016

This litigation began as a dispute between Iconics, a software company, and its former employee, defendant Simone Massaro, over copyright infringement. During the travel of the case, it has metastasized to include ten causes of action and multiple defendants, although copyright is still at its heart. Motions for summary judgment based on the statute of limitations are now before regarding five causes of action against two defendants: Simone Massaro and Chris Volpe. Specifically, the motions are directed at the following: certain copyright

infringement allegations (Count I)[1], certain trade secret

---

[1] The operative complaint contains the following allegations:
"1. Massaro copied Plaintiff's source code files from unspecified versions of Plaintiff's software, including without limitation, Plaintiff's GENESIS64 product, onto the Project Foxtrot repository no later than September 25, 2008.
2. Massaro used Plaintiff's software and source code from unspecified versions of Plaintiff's software, including without limitation, Plaintiff's GENESIS64 product, in the development of Project Foxtrot, reproducing and/or altering significant portions of the code.
3. Massaro copied, without authorization, Plaintiff's software code when he resigned from the company on January 6, 2009.
4. Massaro copied and/or used Plaintiff's unregistered copyrighted works, including unregistered versions of GENESIS64 (including, without limitation, versions released in November 2007 and January 2009), GENESIS32 (including, without limitation, version released in November 2007 and January 2009) and BizViz (including,
without limitation, versions from November 2007 and January 2009) in developing the original products offered for sale by BaxEnergy, further reproducing and/or altering significant portions of the code for that purpose without authorization.
5. Massaro, without license or authorization, copied and/or used the Project Foxtrot source code (including Plaintiff's underlying preexisting software code), which was assigned to Plaintiff no later than December 12, 2012 and recorded no earlier than September 5, 2013.
6. Chris Volpe hired Massaro in September 2007 to develop Project Foxtrot software for Volpe Industries using, without authorization, Plaintiff's software as a starting point.
7. Chris Volpe reproduced portions of Plaintiff's software code on the Volpe Industries server without authorization no later than September 25, 2008.
8. Chris Volpe and Vento Industries offered BaxEnergy's infringing products for sale in the United States with full knowledge that the products in question violated Plaintiff's copyright."

allegations (Count II)[2], the claim of intentional interference with contractual relations (Count IV), the claim concerning removal and alteration of copyright management information (Count V) and the civil RICO claim (Count IX).  Defendants do not currently assert a statute of limitations defense with respect to the other counts.  They also do not assert a statute of limitations defense for claims against defendants BaxEnergy GmbH, BaxEnergy Italia S.r.L, or Vento Industries, Inc.

## I. STANDARD OF REVIEW

On a motion for summary judgment, including a motion for summary judgment based upon the statute of limitations, "the district court must view all facts and reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant." *Santiago Hodge* v. *Parke Davis & Co.*, 909 F.2d 628, 633-34 (1st Cir. 1990).  Summary judgment should be granted "when there is no genuine issue as to a material fact, and the

---

[2] The complaint contains the following allegations in this regard:
"1. Chris Volpe hired Massaro while Massaro was employed by Plaintiff to develop Project Foxtrot for Volpe Industries using Plaintiff's trade secret information as a starting point.
2. Massaro used Plaintiff's trade secrets to develop Project Foxtrot.
3. Chris Volpe maintained large portions of Iconics's trade secrets on the Volpe Industries servers without authorization.
4. Massaro misappropriated Iconics's trade secrets when he left Iconics's employ."

moving party is entitled to a judgment as a matter of law." *Id.* at 633-34.

## II. FACTS AND PROCEDURAL BACKGROUND

The relevant facts in this case regarding the statute of limitations are largely undisputed.  When read in the light most favorable to plaintiff, the party opposing summary judgment, they appear as follows.

The core of this case – as concerns the instant motion – is Massaro's unauthorized taking of Iconics software source code to Volpe Industries.  From 2001 until 2009, Massaro was employed by Iconics, where he worked as a software developer. In 2007, while still employed by Iconics, Massaro began to work for Volpe Industries, a company founded by Chris Volpe, on "Project Foxtrot," a project developing software for video surveillance systems. Volpe hired Massaro, at least in part, to develop Project Foxtrot based on Iconics software.  When Massaro ultimately resigned from Iconics, he copied Iconics source code and took it with him.  Later, when Iconics examined Volpe Industries' servers, it found that Iconics' source code had been copied and inserted into Project Foxtrot, with the Iconics name and identifying information removed.

The outline of these events, although not the details, was first made known to Iconics in an anonymous email received on August 30, 2008.  That email informed Iconics of Massaro's work

for Volpe Industries and his use of Iconics source code.
Iconics responded quickly; its counsel wrote to Volpe
Industries, and specifically to Chris Volpe, on September 15,
2008, stating that Iconics had claims against Volpe Industries
including tortious interference, misappropriation, theft of
trade secrets, unjust enrichment, unfair competition, and unfair
trade practices.

These events led to litigation in both state and federal
court.  On January 27, 2009, Iconics filed a complaint in state
court against Volpe Industries, largely reflecting the causes of
action threatened in its 2008 letter, as well as seeking a
declaration that Iconics owned the source code for Project
Foxtrot.  On December 14, 2009, the Suffolk Superior Court
granted partial summary judgment to Iconics, issuing a
declaratory judgment that Iconics owned all of Massaro's
interests in Project Foxtrot, by operation of employment
contracts between Massaro and Iconics. In 2010, Volpe Industries
filed for bankruptcy in the District of Massachusetts.

During the litigation, defendants have engaged in multiple
efforts to conceal their activities.  It is undisputed that in
the bankruptcy proceedings, Vince Volpe, the brother of Chris,
set up a shell company to purchase and then wipe Volpe
Industries' servers.  The Bankruptcy Court expressed concern
that it had been defrauded by this purchase and when Iconics

ultimately acquired those servers, found that 80,000 files had been deleted.  It is also undisputed that Chris Volpe testified in the state court proceedings that he never knew that Massaro was using Iconics software in his Project Foxtrot work but also stated in his deposition for this proceeding that he was in fact aware.  Iconics alleges, but defendants dispute, that in the state court litigation, Massaro and Volpe Industries intentionally withheld part of the source code to hide the fact that he had copied it from Iconics.

The original complaint in this action was filed on August 30, 2011.  It alleged only one count, copyright infringement, against only Massaro.  At the time, Iconics's allegations focused on infringement claims based on the Project Foxtrot copyrights, which Iconics owned as a result of its contract with Massaro and the state court litigation, rather than on the copyrights for the underlying Iconics source code (part of the GENESIS32, GENESIS64, and BizViz products) which had been stolen.  Iconics has since amended its complaint twice, first on May 20, 2013, and second on April 10, 2014.[3]  It added new causes of action and new facts with each amendment.  The First Amended Complaint added as a defendant BaxEnergy GmbH; the other

---

[3] Iconics also filed yet another motion to amend its complaint on February 27, 2015. That motion was denied on August 18, 2015.

defendants, including Volpe, were added in the Second Amended Complaint.

## III. ANALYSIS

### A.   *Copyright Claims*

At the center of this case, and of defendants' statute of limitations arguments, is the claim of copyright infringement. The limitations period for copyright claims is three years.  17 U.S.C. § 507(b).  "Under the [Copyright] Act, the cause of action accrues when a plaintiff 'knows or has reason to know of the act which is the basis of the claim.'"  *Cambridge Literary Properties, Ltd*. v. *W. Goebel Porzellanfabrik G.m.b.H. & Co. KG*., 510 F.3d 77, 81 (1st Cir. 2007).  A plaintiff can have reason to know of the act based on inquiry notice "once he possesses information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer."  *Warren Freedenfeld Associates, Inc*. v. *McTigue*, 531 F.3d 38, 44 (1st Cir. 2008).

Applying this standard, the three year period can be said to have begun on August 30, 2008, when Iconics received an anonymous email informing it that Massaro was using its software and proprietary source code in his work for Volpe Industries. At that point, Iconics had reason to investigate a potential injury.  At the latest, the claim accrued on September 15, 2008, when Iconics' counsel stated in a letter to Volpe Industries

that Iconics was aware of these improper activities, asserting actual knowledge of the basis of the claim.  Using either of those dates, the original complaint, filed on August 30, 2011, falls within the three year statute of limitations.  And using either of those dates, the amended complaints, filed on May 20, 2013 and April 10, 2014, fall outside the statute of limitations.  Thus, the copyright infringement claims are timely only if they relate back to the original complaint.  It is uncontested that any claims which relate back to the date of the original complaint are not barred by the statute of limitations.

### 1.   Relation Back

Before proceeding to a standard analysis of relation back, it is first necessary to address whether relation back to the original complaint is possible at all in this case.  Defendants argue that because of the statutory requirement that a plaintiff have registered its copyright prior to initiating suit for copyright infringement, the original complaint was a "legal nullity" and so plaintiff cannot relate its claims back to the original filing date.  Defendants urge, essentially, adoption of the approach used in *Morgan* v. *Hanna Holdings, Inc.*, 635 F. Supp. 2d 404, 410-11 (W.D. Pa. 2009) amended, No. CIV.A. 07-803, 2010 WL 1286946 (W.D. Pa. Mar. 31, 2010).  In *Morgan*, the plaintiff had failed to register its copyright before filing its original complaint, as required by the Copyright Act, 17 U.S.C.

§ 411, and had filed its amended complaint after the expiration of the statute of limitations.  The court held that § 411 was a jurisdictional prerequisite and reasoned that as a result, the court lacked jurisdiction over the original, pre-registration complaint altogether.  It therefore held that relation back to the original complaint was not permitted because no complaint had been before the court properly on the original filing date.

This approach, if ever it was sound, cannot survive the Supreme Court's ruling in *Reed Elsevier Inc.* v. *Muchnick,* 559 U.S. 154 (2010).  In *Reed Elsevier*, the Supreme Court held that the registration requirement of § 411 is not jurisdictional but merely a claim processing rule.  Thus, in a scenario such as the one now before me, an original complaint, filed before a copyright is registered, is within the court's jurisdiction, although a plaintiff relying on such a complaint would still fail to state a claim for copyright infringement.  This was recognized in *Charles F. Vatterott Const. Co.* v. *Esteem Custom Homes, LLP*, 713 F. Supp. 2d 844, 846-47 (E.D. Mo. 2010), where the court, in the wake of *Reed Elsevier*, withdrew a decision taking an approach similar to *Morgan*.  The *Vatterott Construction* court recognized that since it had jurisdiction over the original — albeit faulty — complaint, it could allow plaintiffs to amend their complaint after registering their copyrights and further that the amended complaint would relate

back to the original date of filing.   Similarly, the original

complaint in this case was not, as defendants would have it, a

nullity.[4]   Thus, an ordinary analysis of whether the claims in

---

[4] Iconics provides alternative reasons why § 411 does not render the original complaint a nullity.  First, it asserts that the original complaint satisfied § 411, because it concerned the Project Foxtrot copyrights, which had been registered by Volpe Industries and transferred to Iconics by operation of contract. While the First Circuit has suggested that registration, and the ability to sue for infringement, transfers with copyright ownership in this way, it has not directly addressed the question.  *Latin Am. Music Co. Inc.* v. *Media Power Grp., Inc.*, 705 F.3d 34, 44 (1st Cir. 2013) (evidence of previous owner's registration not deemed admissible).  However, at least one court has thoughtfully interpreted the copyright statutes as requiring that the particular party seeking to sue have registered its copyright and not permitting suit under the wrongful registration of a copyright in another party's name. *Compound Stock Earnings Seminars, Inc.* v. *Dannenberg*, No. 3:10-CV-2201-D, 2012 WL 28121, at *3-*5 (N.D. Tex. Jan. 4, 2012).

Second, Iconics argues that registration of a copyright after the filing of an infringement action can cure the § 411 defect retroactively.  Generally, a copyright registration filed after the infringement suit, but before the statute of limitations has expired, will cure the § 411 defect. *See, e.g., Positive Black Talk Inc.* v. *Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004) (citing "considerations of finality, efficiency, and economy"); *Computer Associates Int'l, Inc.* v. *Altai, Inc.*, 775 F. Supp. 544, 557 (E.D.N.Y. 1991) *aff'd in part, vacated in part*, 982 F.2d 693 (2d Cir. 1992) (supplemental registration, within the statute of limitations, cures defect and avoids "formalistic dismissal"); *Foraste* v. *Brown Univ.*, 248 F. Supp. 2d 71, 78 (D.R.I. 2003) (listing cases).  In contrast, where final judgment is sought before the copyright is registered, courts have dismissed the action. *See, e.g., Kernel Records Oy* v. *Mosley*, 694 F.3d 1294, 1302 (11th Cir. 2012). Whether copyrights registered after suit was filed and the statute of limitations had expired but before final judgment was sought can cure a § 411 violation is a difficult question, made more so by *Reed Elsevier*'s unsettling of precedent on the issue. In this situation, the considerations of judicial economy to which courts have turned provide no unambiguous answer.

the Second Amended Complaint relate back to the original filing
date can be undertaken.

An amended complaint relates back to the date of the
original pleading when it "asserts a claim or defense that arose
out of the conduct, transaction, or occurrence set out--or
attempted to be set out--in the original pleading."  Fed. R.
Civ. P. 15(c)(1)(B).  The First Circuit generally allows
relation back for "technical errors" but will not allow relation
back for claims "not even suggested in the original complaint."
*O'Loughlin* v. *Nat'l R.R. Passenger Corp.*, 928 F.2d 24, 26-27
(1st Cir. 1991) *citing* 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND
PROCEDURE, § 1497 (2d ed. 1990).  Between those two poles, courts
look to see whether "the alteration of the original statement is
so substantial that it cannot be said that defendant was given
adequate notice of the conduct, transaction, or occurrence that
forms the basis of the claim."  *Id.*  This analysis "is directed
to conduct rather than causes of action," *Zee-Bar*, *Inc*. v.
*Kaplan*, 162 F.R.D. 422, 426 (D.N.H. 1993), and new legal

---

Because I find that § 411 does not render the original
complaint a nullity, I do not reach these work arounds for a
§ 411 defect.  That said, I note that the willingness of courts
to find that later registrations cure § 411 defects – even at a
time when those defects were perceived to be jurisdictional –
supports the conclusion that claims from the amended complaints
may relate back to the original complaint: courts have generally
been forgiving of § 411 violations and in this related area have
not treated faulty original complaints as legal nullities.

theories may relate back to the original filing where — as here — there is a shared basis in factual circumstances.

### 2.   Simone Massaro

With respect to defendant Massaro, the relation back analysis is straightforward.  The original complaint alleged copyright infringement by Massaro.  It alleged that Massaro used Iconics' copyrighted source code to work on Volpe's Project Foxtrot beginning in 2007.  While the amended complaints provide substantially more detail than the original complaint, much of which was learned during the course of the litigation, the basic sequence of events laid out in each is the same.  The copyright infringement claims against Massaro clearly relate back to the original filing.  This is so even if the specific copyrights in question changed from one version of the complaint to the next, as a result of Iconics's subsequent investigation of the source code itself.  *But see Illinois Tool Works, Inc*. v. *Foster Grant Co., Inc*., 395 F. Supp. 234, 250-251 (N.D. Ill. 1974), *judgment aff'd on the merits*, 547 F.2d 1300 (7th Cir. 1976) (infringement of one patent is not the "same conduct, transaction or occurrence" as the infringement of another patent).  The same infringing events provide the basis for both claims; what changed was only that Iconics discovered that the infringement was more substantial than it originally realized and came to believe that its GENESIS32, GENESIS64 and BizViz copyrights had

been infringed upon directly.  Uncovering that the extent of its injury was greater than expected does not render a plaintiff's claim untimely.  The original and amended complaints concern the same conduct, as regards copyright infringement, and thus the claims against Massaro relate back.

### 3.   Chris Volpe

Unlike Massaro, Chris Volpe was not named as a defendant in the original complaint.  For the new claims against him to relate back to the original filing, additional conditions must be met.  First, the conditions of Rule 15(c)(1)(B) must be satisfied.  For the same reasons as with Massaro, they are.  The original complaint identified Massaro's alleged copyright infringement as being undertaken for work solicited by Volpe and used in Volpe's Project Foxtrot.  The same basic occurrence forms the basis for both complaints, although later-discovered facts changed Iconics's legal theory about that occurrence.

In addition, for the claims against Chris Volpe to relate back, he must, within the period for service of process after the filing of the original complaint, have "(i) received such notice of the action that [he] will not be prejudiced in defending on the merits; and (ii) kn[own] or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ.

P. 15(c)(1)(C).[5]  To show notice, it is not necessary that the
prospective defendant have received formal service of process.
*Morel* v. *DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009).
Nevertheless, "notice requires knowledge of the filing of suit,
not simply knowledge of the incident giving rise to the cause of
action." *Id.*, *citing Singletary* v. *Pa. Dep't of Corr.*, 266 F.3d
186, 195 (3d Cir. 2001).  Actual knowledge is not required;
certain forms of constructive knowledge, such as knowledge
through an attorney shared by the named defendant and added
defendant, can suffice.  *Singletary*, 266 F.3d at 195.  The
burden of establishing relation back falls on Iconics.  *Coons* v.
*Industrial Knife Co., Inc.*, 620 F.3d 38, 44.

Here, Iconics fails to carry that burden.  It offers only
the barest evidence of notice, which is insufficient to show a
lack of prejudice.  First, Iconics points to an email from
Massaro to Volpe in which he states that he received a package
"with a copy of a federal law suit against me." [Dkt. No. 365
p. 1-2].  This e-mail does not describe the content of the

---

[5] Because the original defendant, Massaro, was at the time an
individual in a foreign country, the time for service is not the
standard 120 days under the then-current version of Rule 4(m),
but rather left open-ended; thus, the period for notice is
similarly ill-defined. *See Erie Indem*. *Co*. v. *Keurig, Inc.*, No.
1:10-CV-02899, 2011 WL 2893013, at *4 (N.D. Ohio July 15, 2011)
(analyzing the incorporation of Rule 4(m) in relation back under
Rule 15(c)).  Neither party now before me asserts, however, that
the proffered examples of notice came outside the appropriate
period.

lawsuit at all.  Second, Iconics cites a 2015 deposition of
Volpe in which he testified that Massaro told him of the federal
lawsuit before he became involved in it.  [Dkt. No. 365 p. 1-2].
Again, there is no detail as to what Massaro told him about the
lawsuit and in this case, no detail as to when Massaro told him.
While mere knowledge of the filing of a suit might constitute
sufficient notice for relation back where, for example, one
corporate entity was incorrectly sued rather than another
affiliated entity, *Morel*, 565 F.3d at 26, it is not enough here.
More information about the nature of the suit would be necessary
for Volpe to infer that he could be added as a defendant and
behave accordingly.

Iconics also points to various mentions of the federal
litigation during the bankruptcy proceedings of Volpe
Industries.  The most substantial description of the litigation
– still only a paragraph long – came in a written declaration by
Iconics' counsel filed with the Bankruptcy Court.  This
statement does provide some description of the content of the
complaint against Massaro – enough, on summary judgment, to
support an inference of notice.  However, this statement, like
others referenced in the bankruptcy court filings, was not made
to Chris Volpe himself.  Finding notice therefore requires an
additional inference: that Volpe was further informed about the

litigation against Massaro by his lawyers, perhaps, or that he read the filings himself.

Imputed notice is sufficient for relation back in at least two identified scenarios: the "shared attorney method" and "the identity of interest method." *Singletary*, 266 F.3d at 196.  But the distance notice would have to travel in this case stretches beyond what is contemplated either of those methods.

The "shared attorney" method "is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.*  It requires that the original defendant and the defendant to be added be *concurrently* represented by the same attorney, such that an explanation of the new defendant's potential liability could be expected at that time.  *See Chao* v. *Ballista*, 630 F.Supp.2d 170, 181 (D. Mass. 2009).

The identity of interest method finds notice when the original defendant and the new defendant are so related that the new party "was in effect involved in [the proceedings] unofficially from an early stage." *Young* v. *Lepone*, 305 F.3d 1, 15 (1st Cir. 2002), *quoting Leachman* v. *Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C. Cir. 1982).  Under each of these methods, notice is imputed where one defendant has actually been

served and would be expected to share and explain the full filings against it with the new defendant.

In this case, however, Volpe's connection to the actual complaint, and therefore to an understanding of the likelihood that he could be brought into the suit, is more distant. Iconics has not shown or argued that Massaro shared an attorney or an identity of interest with Volpe.  And Volpe Industries, which arguably did share an identity of interest with Chris Volpe himself, was not the original defendant.  Indeed, Iconics has not even alleged that Volpe Industries was shown the original complaint, but merely that Volpe Industries was exposed to a summary of the contents of the complaint.  The road that notice of this suit traveled – from Iconics lawyers, to the bankruptcy court, to the Volpe Industries bankruptcy lawyer, and perhaps to Volpe himself – is long enough that a thin description of a lawsuit cannot be said to have reached Volpe in a form that provided him with sufficient notice to avoid prejudice.

Notably, the lack of adequate notice bars the relation back of the claims against Volpe for all claims and under any theory of the case.  Volpe was not named as a defendant in the original complaint and so, without notice, no claim against him can relate back to that filing date.[6]  Likewise, Volpe was not named

---

[6] If notice has been provided, Iconics would likely be able to show that Volpe either knew or should have known that the action

as a defendant in the First Amended Complaint – and again Iconics has provided no evidence of notice thereafter – so the claims against him date from their addition in the Second Amended Complaint, on April 14, 2014. While the copyright infringement claims against Massaro are not time-barred, those against Volpe are.

### 4.   Fraudulent Concealment

As a backstop, Iconics seeks to invoke the doctrine of fraudulent concealment to bring defendants within the statute of limitation. Two conditions are required for this doctrine to toll the statute of limitations. "First, the defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts related to the wrongdoing. Second, the Iconics must have failed to discover these facts within the normal limitations period despite his or her exercise of due diligence." *Gonzalez* v. *United States*, 284 F.3d 281, 292 (1st Cir. 2002). The facts giving rise to a fraudulent concealment

---

would have been brought against him, but for a mistake concerning the proper party's identity. A "mistake" can include situations in which the plaintiff did not understand the roles that the two parties played in the underlying conduct giving rise to the claim. *Krupski* v. *Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010). In this case, Iconics did not fully understand Volpe's now-alleged role when it filed its original complaint; since then, for example, Volpe's testimony on relevant matters has changed and Iconics has been able to examine the Project Foxtrot source code and servers. Volpe, knowing his own involvement, should have known that he would have been sued along with Massaro, if Iconics had not made that mistake.

claim must be pled with particularity, under Fed. R. Civ. P.
9(b), *J. Geils Band Employee Ben. Plan* v. *Smith Barney Shearson,
Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996) (applying Rule 9(b)
even on a summary judgment motion), and should therefore include
the time, place and content of the false or fraudulent
representations made by the defendant.  *Epstein* v. *C.R. Bard,
Inc.*, 460 F.3d 183, 189-90 (1st Cir. 2006).  If the requirements
for fraudulent concealment are met, the statute of limitations
is tolled, but only until there were "sufficient storm warnings
to alert a reasonable person to the possibility that there were
either misleading statements or significant omissions involved."
*J. Geils Band Employee Ben. Plan*, 76 F.3d at 1255.

It is unnecessary to decide whether defendants' actions
would satisfy the standard for fraudulent concealment.  Even if
they did, the tolling provided would not be enough to revive the
claims against Volpe.  According to Iconics's own briefing on
fraudulent concealment, Iconics determined that "Mr. Massaro
and/or Mr. Volpe" had removed the copyright management
information from the Iconics source code copied onto the Volpe
Industries servers in February 2011.  In other words, at that
point, Iconics had reason to believe that Volpe was acting to
hide evidence of copyright infringement.  At that point, Iconics
should have seen the "storm warnings" of Volpe's potential
concealment of information.  Indeed, Iconics was likely on

notice of fraudulent concealment much earlier.  In its state
court complaint against Volpe Industries, dated January 27,
2009, Iconics alleged that "Volpe [Industries] hid its scheme
from Iconics and took steps to prevent Iconics from discovering
the extent of Massaro's work on Project Foxtrot."  Regardless of
whether Volpe fraudulently concealed material facts related to
his alleged copyright infringement, the statute of limitations
can only be tolled until sometime between January 2009 and
February 2011.  The claims against Volpe were first raised in
the Second Amended Complaint, which was filed in April 2014,
more than three years after either of those dates.  A finding of
fraudulent concealment would not bring Iconics's claims against
Volpe within the statute of limitations.

####    5.   Distinctions between Infringement Clauses

As a final matter, two allegations of copyright
infringement should be addressed separately.  These deal not
with Project Foxtrot and the events previously described in this
memorandum, but with the involvement of Massaro and Volpe with
defendant BaxEnergy.  Specifically, defendants seek to dismiss,
on statute of limitations grounds, claims that Massaro
improperly used Iconics code to develop products for BaxEnergy
and that Volpe and Vento Industries offered BaxEnergy's
infringing products for sale in the United States.  These
allegations are distinct from those involving Volpe Industries.

They involved different actors and different actions.  For example, Massaro's work for BaxEnergy, making software for the renewable energy sector, is at issue here, as opposed to his work on surveillance software for Volpe Industries.  While surely connected to the Project Foxtrot claims, these two allegations do not, even in the light most favorable to Iconics, arise out of the same transaction or occurrence as the claims alleged in the original complaint.  They cannot be said to relate back to that date.

They do not, however, need to relate back to be timely.  The BaxEnergy conduct was first raised in the First Amended Complaint, on May 20, 2013, so claims regarding BaxEnergy that accrued after May 20, 2010 were timely raised.  The earliest date on which Iconics could have learned of these acts of infringement was September 27, 2010, when it was informed that Massaro was working at BaxEnergy.  Defendants do not provide any alternative earlier date on which the statute of limitations might have begun running with regard to these BaxEnergy claims.  On defendant's motion for summary judgment, therefore, it cannot be said that these BaxEnergy claims were time-barred as to either Massaro or Volpe.

## B.   *Other Claims*

Iconics's Second Amended Complaint lists nine counts in addition to the copyright infringement claim included in the

original complaint.  But as defendants themselves state at the outset of their memorandum in support of summary judgment, "This is a copyright case.  All ten claims-in-suit relate directly to the core issue of alleged copyright infringement."  Each of the causes of action arises, more directly or less, from the conduct alleged in the original complaint.  Given the admittedly close connections between the counts, these new counts generally relate back to the original complaint.  With the partial exception of the civil RICO claim, these are simply new legal theories about the same basic events.

### 1.   Theft of Trade Secrets

Under Massachusetts law, the statute of limitations for tort actions is three years. Mass. Gen. L. ch. 260 § 2A.  This includes actions for the misappropriation of trade secrets. *Stark* v. *Advanced Magnetics, Inc*., 736 N.E.2d 434, 441 (Mass. App. Ct. 2000).  The statute of limitations begins to run when a plaintiff discovers or should have discovered that it was harmed.  *Bowen* v. *Eli Lilly & Co*., 557 N.E.2d 739, 741 (Mass. 1990).  Iconics was first made aware that Massaro may have used its source code in his work for Volpe Industries in the anonymous email of August 30, 2008.  Iconics directly stated that it had a claim for the theft of trade secrets in its September 15, 2008 letter to Volpe Industries.  Thus, claims

that were raised in or relate back to the original complaint are
timely, whereas those raised later are not.

The trade secrets claims against Massaro relate back to the
original complaint.  They arise out of the same conduct,
Massaro's use of Iconics source code in Project Foxtrot.
Indeed, the original complaint even alleged that there had been
"misuse of [Iconics'] trade secrets."  Massaro certainly had
notice that this behavior was the subject of the lawsuit, and
even had notice of the potential for this legal theory to be
raised against him.  The claims against Volpe, on the other
hand, do not relate back to the original complaint.  As before,
Volpe was not named as a defendant originally and Iconics has
not shown that he had notice of the lawsuit within the requisite
period after the original complaint was filed.  Accordingly, the
theft of trade secrets count is time-barred against Volpe but
not against Massaro.

### 2.  Intentional Interference with Contractual Relations

The statute of limitations analysis for Iconics's
intentional interference with contractual relations claims is
largely identical to that for the theft of trade secrets claim.
Again, the statute of limitations is three years.  Mass. Gen. L.
ch. 260 § 2A.  Again, it begins to run either from the date of
the anonymous e-mail or, at the latest, from the date on which
Iconics's counsel identified it to Volpe Industries as a

potential cause of action.  On this count, defendants seek a
statute of limitations defense only as to Volpe (Massaro was not
named in this cause of action).  Thus, as before, the lack of
notice defeats any effort to relate this claim back to the
original filing as against Volpe, and therefore the claim is
time-barred.

### 3.  Removal and Alteration of Copyright Management Information

Iconics's claims under the Digital Millenium Copyright Act
(DMCA), 17 U.S.C. § 1202, were first raised in the Second
Amended Complaint, dated April 10, 2014.  Specifically, Iconics
alleges that defendants removed and altered copyright management
information from the headers of Iconics source code.  Defendants
argue, and Iconics does not contest, that this claim accrued
when Iconics discovered the removal of its copyright management
information in February 2011.  The statute of limitations for
these claims is three years.  17 U.S.C. § 507(b).  As such,
Iconics's DMCA claims are time-barred unless they relate back to
an earlier complaint.  Once again, however, the claims against
Massaro relate back to the original complaint (or on this count,
at least the 2013 First Amended Complaint).  The allegations in
the Second Amended Complaint arise out of the same conduct as
outlined originally, Massaro's taking of Iconics source code to
his work with Volpe Industries.  The alleged removal of the

24

headers was simply a later-discovered aspect of that taking, one meant to disguise Massaro's actions.  The DMCA claims relate back to the original filing date and are timely as against Massaro.  Once again, the claims against Volpe do not relate back to the original or First Amended filing dates, as there is no evidence that Volpe had notice of this suit at those times.

### 4.   Civil RICO

The precise legal contours of the statute of limitations for a civil RICO claim such as this one have not been fully defined in binding case law.  The statute of limitations for civil RICO is four years.  *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987).  In the First Circuit, a civil RICO claim accrues according to an injury discovery rule.  *Lares Grp., II* v. *Tobin*, 221 F.3d 41, 44 (1st Cir. 2000).  Under this rule, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.*, *citing Rotella* v. *Wood*, 528 U.S. 549, 556–57 (2000).  However, both the Supreme Court and First Circuit have declined to determine how the statute of limitations should be treated where the injury is discovered before all the underlying predicates of a civil RICO cause of action – and in particular the second predicate act needed for a pattern of racketeering to occur - have occurred.  *Lares Grp. II*, 221 F.3d at 45 ("a

different accrual rule may apply where a plaintiff's injury does not complete her cause of action"); *Rotella*, 528 U.S. at 559 n.4 ("we need not and do not decide whether civil RICO allows for a cause of action when a second predicate act follows the injury, or what limitations accrual rule might apply in such a case."). Some courts, such as the Sixth Circuit (in an unpublished opinion) and the Ninth Circuit (in a pre-*Rotella* opinion that district courts have continued to apply post-*Rotella*), have held that a civil RICO cause of action does not accrue until all elements of the cause of action are present. *Bygrave* v. *Van Reken*, 238 F.3d 419, 2000 WL 1769587 at *4 (6th Cir. 2000)(per curiam); *Bulletin Displays, LLC* v. *Regency Outdoor Advert., Inc.,* 518 F. Supp. 2d 1182, 1186 (C.D. Cal. 2007), *citing Grimmett* v. *Brown*, 75 F.3d 506, 512 (9th Cir. 1996).

This case falls into an unsettled category of RICO claim. In its Second Amended Complaint, Iconics pled two predicate acts as underlying its RICO claim: "copyright infringement under 17 U.S.C. §§ 506, and/or fraud in connection with a case under Title 11 destruction alteration or falsification of records, 18 U.S.C. § 1519." The injury stemming from the copyright infringement, as described above, was discovered in August or September of 2008. This injury, moreover, is the one at the heart of Iconics's civil RICO claim; the destruction of documents primarily caused injury to Iconics by concealing the

details of the copyright infringement injury.  Thus, woodenly
applying the rule outlined in *Lares Grp. II*, the four-year
statute of limitations would run from that 2008 discovery date
and have expired in 2012, before the filing of the Second
Amended Complaint.  However, the second predicate act, relating
to fraud and the destruction of records in relation to a
bankruptcy proceeding, did not occur until significantly later.

     Volpe Industries filed for bankruptcy on October 1, 2010
and Iconics asserts that Volpe deleted files from the bankruptcy
assets in September or October of that year.  The Bankruptcy
Court discovered the fraud upon the court on June 8, 2012 and
Iconics discovered that 80,000 files had been deleted from the
Volpe Industries computers after it acquired them on February
11, 2013.  If the claim did not accrue until the second
predicate act occurred, the statute of limitations did not
expire until September 2014, at the absolute earliest.
Accordingly, under that theory, claims raised in the Second
Amended Complaint, on April 10, 2014, were timely.

     I hold that civil RICO claims only accrue when two
predicates for the cause of action have occurred (although they
need not all have been discovered).  The weight of the Supreme
Court's reasoning would support an accrual date that begins only
once the predicates for a cause of action have taken place.  In
*Rotella*, the Court identified the policies behind all

27

limitations policies as "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Id.*  When the predicates do not yet exist, beginning the statute of limitations clock would not serve these goals.  The statute of limitations would not eliminate stale claims; it would eliminate claims not yet even ripe.  Likewise, forcing parties to litigate over still-unripe civil RICO claims, in order to avoid being time-barred, would dramatically add to uncertainty for plaintiffs and defendants alike, encouraging poorly-formed and speculative RICO litigation to be rushed into court.  Perhaps most importantly, the Supreme Court, in reserving the issue, referenced "the cardinal principle that a limitations period does not begin to run until the cause of action is complete." *Id.* at 559 n.4, *citing Rawlings* v. *Ray*, 312 U.S. 96, 98 (1941).  The Court thus recognized that a limitations period that begins before the second predicate act would clash with the most basic purposes of a statute of limitations – and strongly suggested that such a rule would not be received favorably.

The RICO statute itself also provides a strong basis for finding that the statute of limitations does not begin until the second predicate act has occurred.  A contrary rule would mean that certain RICO claims, in which the second predicate act followed the discovery of the injury from the first by more than

four years, could never be brought.  This would eviscerate the Congressional scheme, which allows for patterns of racketeering activity where two predicate acts are separated by up to ten years.  18 U.S.C. § 1961(5).  It is nonsensical to base RICO statute of limitation law on the assumption Congress would have structured the definition of a pattern of racketeering to include acts ten years apart if it meant for the statute of limitations to expire four years after the first predicate act. I hold that the civil RICO claim here did not accrue until bankruptcy proceedings were at least underway and therefore is not time-barred as against either Volpe or Massaro.

## IV. CONCLUSION

For the reasons set forth above, I GRANT IN PART and DENY IN PART Defendants' motion for summary judgment.  I deny the motion in so far as it seeks summary judgment on the statute of limitations grounds for claims against Simone Massaro.  I grant summary judgment based on the statute of limitations grounds for the trade secrets, intentional interference with contractual relations and DMCA claims against Christopher Volpe, as well as the copyright infringement claims related to Volpe Industries,

but deny summary judgment as to him for the civil RICO claims

and the copyright infringement claims related to BaxEnergy.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE